## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

November 26, 1920.

## THE PEOPLE v. WILLIAM F. WYCKOFF.

(194 App. Div. 47.)

GRAND LARCENY—FAILURE OF ATTORNEY TO ACCOUNT FOR MONEY COLLECTED.

A conviction of the crime of grand larceny in the second degree cannot be sustained where the evidence shows merely that the defendant was a member of a firm of attorneys which did a large investment business; that money was received by the firm to discharge a mortgage held by it for one of its clients; that the check was indorsed to the defendant and then to the bank in which the defendant had an account for the firm by a clerk who held a power of attorney; that immediately after dissolution of the firm the defendant filed a petition in bankruptcy and scheduled the amount due the client as a liability, and there is nothing outside of the bankruptcy schedules to connect the defendant personally with the transaction or to show that in retaining the money the firm acted contrary to the directions of the client.

APPEAL by the defendant, William F. Wyckoff, from a judgment of the County Court of the County of Queens, rendered on the 24th day of May, 1915, convicting him of the crime of grand larceny · in the second degree, and also from an order entered in said clerk's office on the 2d day of June, 1915; denying defendant's motion for a new trial made upon the minutes.

*William Rasquin, Jr. (Almon G. Rasquin with him on the brief), for the appellant.*

*Harry Van Alst, Assistant District Attorney (Denis O'Leary, District Attorney, with him on the brief), for the respondent.*

JAYCOX, J.:

The defendant has been convicted of the crime of grand larceny in the second degree. On the date of the alleged larceny, January 24, 1912, and for some time prior thereto, the defendant was a practicing lawyer and a member of the firm of Wyckoff, Clarke & Frost. This firm was the successor of the firm of Wyckoff, Statsir & Frost, of which the defendant was also a member. This firm did a large general law business and in addition a large business in conveyancing and investing money upon bond and mortgage. It had offices at Mineola, in Nassau county, Jamaica, in Queens county, and in the borough of Brooklyn, Kings county. The firm kept three bank accounts—one in the name of the firm at Mineola, one in the name of the firm at Jamaica, and the third in the Mechanics Bank, Brooklyn, in the name of William F. Wyckoff. One Fannie Halsey was the owner and holder of a mortgage for $700 which had been assigned to her as a part of her distributive share of the estate of her sister. The firm of Wyckoff, Clarke & Frost had acted as attorneys for the executors of the will of Miss Halsey's sister. On the 22d of November, 1911, a letter was sent to one of the executors

inclosing an assignment in blank of the mortgage held by Fannie Halsey, with the request that she execute the assignment and return it with the other papers in the matter. This was done by Miss Halsey and shortly thereafter an attorney representing the mortgagor called at the office of Wyckoff, Clarke & Frost and gave to the cashier of that firm a check for $700, indorsed payable " to the order of Wyckoff, Clarke & Frost." This check was indorsed by the cashier of said firm " Pay to the order of William F. Wyckoff " and signed with the firm name by John L. Vandeveer, then indorsed " Pay to the order of Mechanics Bank " and signed " William F. Wyckoff by John L. Vandeveer." Vandeveer had power of attorney to sign checks upon the account in the Mechanics Bank and apparently power to indorse the name of Wyckoff, Clarke & Frost. This check was deposited in the Mechanics Bank and entered in the cash book of Wyckoff, Clarke & Frost. It was also entered in the investment ledger of said firm under date of January 26, 1912, " Fannie Halsey, Michael Heslin, .J. W. McGee, $700."

The firm of Wyckoff, Clarke & Frost did a large investment business, and the amount of money passing through the office at about the time of this transaction was about $200,000 per month. The firm collected interest upon investments and transmitted the same to its clients. It made a charge of 2 per cent for collections. After the payment of this money to said firm for the Heslin-Halsey mortgage, the firm remitted to Miss Halsey six months' interest, less 2 per cent for collection, on the 18th of April and again on the 24th of September. The testimony was that this was done according to custom. About the 1st of January, 1913, the firm of Wyckoff, Clarke & Frost was dissolved and the defendant filed a voluntary petition in bankruptcy, the schedules in which were verified on the 13th day of February, 1913. Fannie Halsey appeared in the schedule of creditors whose claims were unsecured as a creditor for $700. No demand was made upon the defendant or his

firm, or anything said to the defendant or any of the firm about this matter except that about the 1st day of January, 1913, the executors of the will of Miss Halsey's sister—her nephews—called upon the defendant and in the conversation asked Wyckoff if he remembered anything about the Heslin mortgage, to which Wyckoff replied: "People come in in a hurry sometimes and want to pay off a mortgage and then they do not do it." Miss Halsey testifies that the money was never paid over to her.

These facts, it seems to me, are entirely insufficient to convict the defendant of the crime of grand larceny. There is nothing in the evidence except the statement in the bankruptcy schedules that the defendant owes Miss Halsey $700, to in any way connect him with this money any more than any other member of the firm. There is nothing to show that he ever drew this money out or used it in any way prior to the dissolution of the firm. There is no direct testimony to show that he knew anything about the transaction. Neither is there any testimony to show that in retaining the money the firm acted contrary to Miss Halsey's directions. It may well be that at the time of the dissolution of the firm the defendant and his partners divided the debts of the firm and that this particular indebtedness was allocated to the defendant. The evidence is insufficient to warrant a conviction and the judgment of the court below should be reversed and a new trial ordered.

JENKS, P. J., RICH, BLACKMAR and KELLY, JJ., concur.

Judgment of conviction of the County Court of Queens county, and order, reversed, and a new trial ordered.